UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| EDWIN FREDDY DURAN SIGUENZA, | * * * | |
| Petitioner, | * * | |
| v. | * * | Civil Action No. 25-CV-11914-ADB |
| ANNE MONIZ, PATRICIA HYDE, TODD LYONS, and KRISTI NOEM, | * * * | |
| Respondents. | * * | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

In this habeas action, Petitioner Edwin Freddy Duran Siguenza, a noncitizen re-detained by the United States Department of Homeland Security on March 18, 2025, seeks release from immigration detention. [ECF No. 1]. The federal government opposes the petition. [ECF No. 9]. For the reasons below, Petitioner's petition is **GRANTED**.

I. BACKGROUND

Petitioner was born in and is a citizen of Ecuador. [ECF No. 1 ¶ 21]; [ECF No. 1-1 ¶ 1]; [ECF No. 9-1 ¶ 7]. He is not a citizen or national of the United States. [ECF No. 9-1 ¶ 7]. After he entered the United States, in 2015, he was placed in removal proceedings. [ECF No. 1 ¶ 28]; [ECF No. 9-1 ¶ 10]; see also [ECF No. 1-2 (notice to appear)]. On April 12, 2018, an immigration judge ordered his removal to Ecuador but found that he was entitled to withholding of removal under the United Nations Convention Against Torture ("CAT"). [ECF No. 1-1 at 7–8]. Two months later, on June 11, 2018, Petitioner

1

was released from U.S. Immigration and Customs Enforcement ("ICE") custody pursuant to an order of supervision. [ECF No. 1-3]. Almost seven years later, on March 18, 2025, the federal government administratively arrested him and revoked his order of supervision "based upon the determination that removal to a third country was appropriate." [ECF No. 9-1 ¶ 14]. When he was arrested, Petitioner received a Notice of Revocation of Release from ICE that was signed by Respondent Patricia Hyde, the Acting Field Office Director for the ICE Boston Field Office. [ECF No. 1-1 ¶ 27]; [ECF No. 9-1 ¶ 15]; [ECF No. 1-1 at 10]. That Notice stated that the decision to revoke Petitioner's order of supervision "ha[d] been made based on a review of [his] official alien file and a determination that there [were] changed circumstances in [his] case," and that "ICE has determined there is a significant likelihood of removal in the reasonably foreseeable future." [ECF No. 1-1 at 10]. The Notice acknowledged that he was subject to withholding of removal under CAT, stating that "it is appropriate to enforce the removal order and remove you to a third country." Id.

On July 7, 2025, three-and-a-half weeks after his arrest, Petitioner filed the instant petition for a writ of habeas corpus. [ECF No. 1]. Respondents opposed the petition on July 21, 2025. [ECF No. 9]. Attached to the opposition was a declaration by Acting Deputy Field Office Director John Charpentier, dated July 21, 2025, that stated, as relevant here, that ICE "continues to make efforts and intends to remove Petitioner to a third country," but that "[n]o third country of removal has been identified at this time." [ECF No. 9-1 ¶ 18]. On August 28, 2025, Petitioner filed a motion for preliminary injunction seeking release from detention. [ECF No. 11]. Respondents opposed the

motion on September 11, 2025, [ECF No. 14], and Petitioner replied on September 18, 2025, [ECF No. 18].

The Court held a hearing on September 24, 2025, instructing the parties in advance to be prepared to address "whether there is a significant likelihood that [P]etitioner will be removed in the reasonably foreseeable future, including by addressing (1) any changed circumstances impacting the likelihood of [P]etitioner's removal immediately preceding [P]etitioner's re-detention and since his re-detention; (2) any steps taken to identify any third country that will accept [P]etitioner and to effectuate his removal to such country since [P]etitioner's re-detention; and (3) the number of removals of similarly situated noncitizens to third countries since [P]etitioner's re-detention." [ECF No. 17].  At the hearing, counsel for Respondents stated that "there is a chance, there's a probability" that Petitioner would be removed to a third country; that the government was contacting and "in the process of working with" countries that were members of a South American trade bloc called Mercosur, of which Ecuador is an associate member; and that he could not provide "a specific timeframe" as to when Petitioner would be removed.

## II.     DISCUSSION

The primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction on federal courts to hear noncitizens' challenges to the lawfulness of their immigration detention.  Zadvydas v. Davis, 533 U.S. 678, 687 (2001); Kong v. United States, 62 F.4th 608, 614 (1st Cir. 2023).  Here, Petitioner challenges the lawfulness of his re-detention on statutory, regulatory, and constitutional grounds.  He argues that the government's re-detention of him violates 8 U.S.C. § 1231(a)(6) and 8 C.F.R. § 241.13(i)(2), which permits ICE to "revoke an alien's release under this section and return the alien to custody if, on

account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." See [ECF No. 1 ¶¶ 47–57]; [ECF No. 12 at 5–8]. He also argues that his continued detention violates the Fifth Amendment to the United States Constitution and the Supreme Court's decision in Zadvydas. [ECF No. 1 ¶¶ 58–67]; [ECF No. 12 at 5–10]. Respondents argue that 8 U.S.C. § 1231(a)(6) and a different regulation, 8 C.F.R. § 241.4(*l*)(2)(iii), authorize Petitioner's continued detention and that there is a "significant likelihood of removal in the reasonably foreseeable future," meaning that his detention is permissible under Zadvydas. [ECF No. 9 at 4–8].

In Zadvydas, the Supreme Court held that the post-removal-period detention statute, 8 U.S.C. § 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689; see also Jennings v. Rodriguez, 583 U.S. 281, 299 (2018) (describing Zadvydas as a "notably generous application of the constitutional-avoidance canon"). After a "presumptively reasonable period of detention" of six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701. Although not "every alien not removed must be released after six months," release is required once "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. The rule of Zadvydas applies to noncitizens such as Petitioner who are detained under § 1231(a)(6) on the ground that they are inadmissible under 8 U.S.C. § 1182. Clark v. Martinez, 543 U.S. 371, 378 (2005).

4

Under First Circuit precedent, ICE's decision to re-detain a noncitizen who has been granted supervised release is also governed by 8 C.F.R. § 241.13(i)(2), which requires "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." Kong, 62 F.4th at 619–20.[1]

Here, Petitioner's detention is no longer presumptively reasonable under Zadvydas. The parties at the hearing disagreed as to whether Zadvydas' presumptively

---

[1] At the hearing, but nowhere in their briefing, Respondents argued that 8 C.F.R. § 241.13 is inapplicable and that Petitioner's detention needs to comply only with 8 C.F.R. § 241.4. Although there is some support for Respondents' argument in the language of the regulations, see 8 C.F.R. § 241.4(b)(4) ("The custody review procedures in this section do not apply after the Service has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future. However, if the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future . . . , the alien shall again be subject to the custody review procedures under this section."); id. § 241.13(b)(1) ("Section 241.4 shall continue to govern the detention of aliens under a final order of removal . . . unless the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future."); see also Rombot v. Souza, 296 F. Supp. 3d 383, 387 (D. Mass. 2017) (distinguishing "special review procedures" of § 241.13 from revocation of release under § 241.4), it is in tension with Kong, which explicitly described "ICE's decision to re-detain a noncitizen . . . who has been granted supervised release" as subject to 8 C.F.R. § 241.13, 62 F.4th at 619. The Court also notes that the Notice of Revocation of Release issued to Petitioner refers not only to 8 C.F.R. § 241.4 but also to "changed circumstances" that purportedly justified his re-detention. [ECF No. 1-1 at 10]. Because the Court's decision turns on Respondents' statutory authority under 8 U.S.C. § 1231(a)(6), upon which Respondents indisputably rely to detain Petitioner, and because both Petitioner and Respondents at the hearing agreed that this case could be resolved under Zadvydas alone, it need not resolve the regulatory issue. It also need not decide whether, in cases such as this one that involve re-detention rather than initial detention, detention for less than six months could violate applicable law or regulations because the six-month mark has been exceeded in Petitioner's case. Cf. Nguyen v. Hyde, No. 25-cv-11470, 2025 WL 1725791, at *5 (D. Mass. June 20, 2025) (ordering release of noncitizen re-detained in violation of 8 C.F.R. § 241.13 even though that noncitizen had been detained for less than six months).

5

reasonable six-month period of detention restarted when Petitioner was re-detained or must be calculated to account for his prior two-month period of immigration detention. Most courts to consider the issue have concluded that the Zadvydas period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them. See Nguyen v. Scott, No. 25-cv-01398, 2025 WL 2419288, at *13 (W.D. Wash. Aug. 21, 2025); Escalante v. Noem, No. 25-cv-00182, 2025 WL 2206113, *3 (E.D. Tex. Aug. 2, 2025); Diaz-Ortega v. Lund, No. 19-cv-670, 2019 WL 6003485, at *7 n.6 (W.D. La. Oct. 15, 2019), report and recommendation adopted, No. 19-cv-670, 2019 WL 6037220 (W.D. La. Nov. 13, 2019); Hamama v. Adducci, No. 17-cv-11910, 2019 WL 2118784, at *3 (E.D. Mich. May 15, 2019); Sied v. Nielsen, No. 17-cv-06785, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018); Chen v. Holder, No. 14-cv-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015). But see Guerra-Castro v. Parra, No. 1:25-cv-22487, 2025 WL 1984300, at *4 (S.D. Fla. July 17, 2025) (counting from time of re-detention); Thai v. Hyde, No. 25-cv-11499, 2025 WL 1655489, at *3 (D. Mass. June 11, 2025) (same). Even assuming, however, that the Zadvydas period restarted on March 18, 2025, when Petitioner was re-detained (and not sooner, to account for Petitioner's two months of detention in 2018), that period expired on September 18, 2025. At that point, at the latest, although Respondents were not required to release Petitioner, his detention was no longer presumptively reasonable. Zadvydas, 533 U.S. at 701. In fact, Petitioner's detention was no longer authorized under § 1231(a)(6) if Petitioner could provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and Respondents were unable to rebut that showing. Id.

Here, § 1231(a)(6) no longer authorizes Petitioner's detention because there is no significant likelihood that he will be removed in the reasonably foreseeable future. Specifically, as Respondents noted when they revoked Petitioner's order of supervision, [ECF No. 1-1 at 10], Petitioner cannot be removed to Ecuador, and Respondents, in the more than six months since Petitioner's re-detention, have not been able to even identify a third country that might be willing to accept him, let alone secure travel documents for Petitioner.  Respondents argue that "the sheer fact that the Government has not yet secured a country to which it can remove Petitioner does not mean that there is no significant likelihood of it succeeding in the reasonably foreseeable future."  [ECF No. 14 at 3]. Respondents have not, however, produced any evidence of such a likelihood.  At the hearing, Respondents stated that they were "in the process of working with" Mercosur countries, a trade block that currently includes five full members (Argentina, Bolivia, Brazil, Paraguay, and Uruguay) and seven associated members (Chile, Colombia, Ecuador, Guyana, Panama, Peru, and Suriname), and that there was a "chance" that Petitioner would be removed to one of these countries, but that they could not provide "a specific timeframe" for his removal.  At the risk of stating the obvious, a "chance" of removal within an unspecified period of time is not the same as a significant likelihood of removal in the reasonably foreseeable future.  The Court also notes that, despite the Court's pre-hearing order, Respondents at the hearing provided no evidence regarding any changed circumstances that made Petitioner's removal significantly likely and no evidence about removals of similarly situated noncitizens.  Thus, the Court is satisfied that Petitioner has provided good reason to believe that his removal is not significantly likely in the reasonably foreseeable future and Respondents have failed to rebut that showing.

7

Respondents argue that "Petitioner's submissions fail to establish that there is no significant likelihood of his removal in the reasonably foreseeable future." [ECF No. 14 at 3]. This argument misstates Petitioner's burden, which is to provide "good reason" to believe that his removal is not significantly likely in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701; see also Hernandez-Lara v. Lyons, 10 F.4th 19, 38 (1st Cir. 2021) (calling burden under Zadvydas "quite different from the burden placed on a noncitizen detained under [8 U.S.C. §] 1226(a) to 'show to the satisfaction of the Immigration Judge that he or she' is neither dangerous nor a flight risk" (citation omitted)); Mary Holper, The Beast of Burden in Immigration Bond Hearings, 67 Case W. Rsrv. L. Rev. 75, 104–05 (2016) (noting that Zadvydas "appears to place the burden of production on the detainee, but the ultimate burden of persuasion on the government"). Given that Petitioner has carried his burden, the burden shifted to Respondents to produce evidence showing that Petitioner's removal is significantly likely. Zadvydas, 533 U.S. at 701. Because Respondents have not put forth such evidence, Petitioner's detention is no longer authorized by § 1231(a)(6), and he must be released. Id.[2]

## III.   CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus is **GRANTED**. Petitioner is to be released from immigration detention immediately. He must continue to comply with the conditions in his preexisting order of supervision. Nothing in this order prevents Respondents from continuing to work to identify a third country that will accept Petitioner and, once ICE secures travel documents for Petitioner,

---

[2] At the hearing, counsel for Respondents stated that this was "purely a Zadvydas case" and agreed that it was fully within the Court's discretion to release Petitioner.

from re-detaining Petitioner to effectuate his removal, in accordance with applicable federal law and regulations.

**SO ORDERED.**

September 25, 2025                                           */s/ Allison D. Burroughs*
                                                            ALLISON D. BURROUGHS
                                                            U.S. DISTRICT JUDGE